UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| BRET CHIAFALO and LEVI GUERRA,<br><br>Plaintiffs,<br><br>v.<br><br>JAY INSLEE, in his official capacity as Governor of Washington , BOB FERGUSON, in his office capacity as Attorney General of Washington, and KIM WYMAN, in her official capacity as Washington Secretary of State,<br><br>Defendants. | CASE NO.<br><br>PLAINTIFFS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

## I.  RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 65(a) and (b) and LCR 65, Plaintiffs Bret Chiafalo and Levi Guerra move for entry of a temporary restraining order and preliminary injunction.

## II.  CERTIFICATE OF COMPLIANCE WITH LCR 65

The undersigned hereby certifies that, pursuant to LCR 65, actual notice of the time of filing of this Motion and copies of all pleadings and papers filed in the action to date have been provided to defendants. A certificate of service of this motion and supporting papers is filed herewith.

## III.  INTRODUCTION

This case concerns the infringement on Plaintiffs' constitutional right to vote as electors for whomever Plaintiffs believe to be the best and most qualified persons for the

MOTION BY PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION - 1

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 792-5230 • (206) 452-0655 FAX

offices of President and Vice-President of the United States of America. Infringement will operate through Defendants' enforcement of RCW 29A.56.340.

Plaintiffs were nominated and selected to be presidential electors for 2016 by the members of the Washington Democratic Party, pursuant to its rules, at the party convention/assembly in April 2016. See Complaint at Exhibit 1. As part of their nomination and selection, Plaintiffs were obligated to sign a pledge to vote for the Democratic Party nominees if the majority of the people in Washington voted for such nominees on November 8, 2016. *Id.*

Plaintiffs believe that the Republican nominees for President and Vice-President, Donald Trump and Mike Pence, represent a unique danger to the Republic and embody the very reason the Founders created the Electoral College. Plaintiffs' have the right under the Constitution, as electors, to vote for the candidates that they believe are most fit and qualified to run this country, even if that means voting for someone other than the Democratic nominees.

Defendants, through enforcement of RCW 29A.56.340, will compel Plaintiffs to vote for a specific set of candidates, Hillary Clinton and Tim Kaine. While Plaintiffs may vote for them, Plaintiffs have a constitutional right to vote for whomever they freely choose and cannot be compelled to vote for any candidate. The danger presented by the Trump/Pence ticket is unique in our nation's history and Plaintiffs seek the ability to exercise their constitutional right as electors to vote for other candidates, whether Democratic or Republican. Yet RCW 29A.56.340 and its concomitant fines will punish Plaintiffs for their exercise of their constitutional rights.

## IV. RELEVANT FACTS AND EVIDENCE RELIED UPON

Along with this Motion, Plaintiffs have filed a Verified Complaint for Declaratory and Injunctive Relief (the "Complaint") seeking the Court's declaration of their rights as electors under RCW 29A.56.300 *et seq.* and seeking temporary, preliminary, and permanent injunctive

relief. Attached to the Complaint as Exhibits A and B are the Declarations of Bret Chiafalo and Levi Guerra, which are incorporated herein by reference.

## V. STANDARD OF REVIEW

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 19 (2008). The same legal standard applies to a motion for a temporary restraining order and a motion for a preliminary injunction. *See, e.g., Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir.2001).

The Ninth Circuit has described two sets of criteria for preliminary injunctive relief. "Under the 'traditional' criteria, a plaintiff must show '(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).'" *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1297–98 (9th Cir. 2003) (quoting *Johnson v. Cal. State Bd. of Accountancy,* 72 F.3d 1427, 1430 (9th Cir.1995)). "Alternatively, a court may grant the injunction if the plaintiff 'demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.'" *Id.* (citations omitted) (emphasis in original). "These two alternatives represent 'extremes of a single continuum,' rather than two separate tests." *Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810 (9th Cir.2003). "Thus, the greater the relative hardship to [the party seeking the preliminary injunction,] the less probability of success must be shown." *Id.* (citation omitted) (alteration in original).

## VI. ARGUMENT

### A. Substantial Likelihood of Prevailing on the Merits

Plaintiffs are substantially likely to prevail on the paramount issue that Washington's elector binding statute, RCW 29A.56.340, is unconstitutional because it violates Article II of the U.S. Constitution, as amended by the Twelfth Amendment, and it compels speech in violation of the First Amendment. "Obviously we must reject the notion that Art. II, § 1, gives the States power to impose burdens on the right to vote, where such burdens are expressly prohibited in other constitutional provisions." *Williams v. Rhodes*, 393 U.S. 23, 29 (1968).

#### 1. The Electoral College is Superfluous if Electors are Forced to Vote for Certain Candidates.

"[P]olitical parties in the modern sense were not born with the Republic. They were created by necessity, by the need to organize the rapidly increasing population, scattered over our Land, so as to coordinate efforts to secure needed legislation and oppose that deemed undesirable." *Ray v. Blair*, 343 U.S. 214, 220-21, (1952).[1] "The presidential electors exercise a federal function in balloting for President and Vice-President but they are not federal officers or agents any more than the state elector who votes for congressmen. They act by authority of the state that in turn receives its authority from the Federal Constitution." *Id*. at 224-25. Thus, though the states have authority to appoint electors pursuant to Article II § 1, that power cannot "be exercised in such a way as to violate express constitutional commands that specifically bar States from passing certain kinds of laws." Rhodes, 393 U.S. at 29.

The Court in *Ray* found requiring electors to sign a pledge to certain candidates was valid and constitutional, but explicitly left open the question of enforcement of statutes like Washington's, noting: "However, even if such promises of candidates for the electoral college

---

[1] *Ray* came about when the Democrats in Alabama in the 1948 presidential election refused to vote for Truman because of the pro-civil rights platform, and, instead, voted for Strom Thurmond and formed the Dixiecrats. The party thereafter instituted a pledge for electors that they vote for the party's nominee.

MOTION BY PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION - 4

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 792-5230 • (206) 452-0655 FAX

are legally unenforceable because violative of an assumed constitutional freedom of the elector under the Constitution, Art. II, § 1, to vote as he may choose in the electoral college, it would not follow that the requirement of a pledge in the primary is unconstitutional." *Ray*, 343 U.S. at 230.

Only electors vote for the President and Vice-President. *See* U.S. Const. Art II § 1; U.S. Const. Amend. XII. The electoral college was created to be separate, a "small number of persons selected by their fellow-citizens … most likely to possess the information and discernment requisite to so complicated an investigation" who choose the President and Vice-President. The Federalist No. 68, at 412 (Alexander Hamilton) (Clinton Rossiter ed., 1961). The electors act "under circumstances favorable to deliberation." *Id.* [2] The electors would be insulated from "mischief," "tumult," and "disorder." *Id.* The electors would be less exposed "to heats and ferments" of the people. Id. The Electoral College creates an "obstacle … to cabal, intrigue, and corruption." *Id.* Chief among the reasons for the Electoral College was to prevent "foreign powers" from "gain[ing] an improper ascendant in our councils," might be achieved "by raising a creature of their own to the chief magistracy of the Union." *Id.* at 412-13. The electors were to "vote for some fit person as President." *Id.* at 413. Thus, the country would be

> "afford[ed] a moral certainty that the office of President will seldom fall to the lot of any man who is not in an eminent degree endowed with the requisite qualifications. Talents for low intrigue, and the little arts of popularity, may alone to suffice to elevate a man to the first honors in a single State; but it will require other talents, and a different kind of merit, to establish him in the esteem and confidence of the whole Union …."

*Id.* at 414.

Statutes such as Washington's, which require electors to vote for a party's slate of candidates lest the elector be punished with civil fines and penalties, render the electoral

---

[2] The electors were excluded from being "those who from situation might be suspected of too great devotion to the President in office." Id. Thus, it is better that members of the Electoral College be ordinary citizens such as Plaintiffs, as opposed to even state political office holders who would always stand to personally benefit by devoting themselves to the President.

college superfluous, which violates one of the basic cannons of Constitutional law and statutory interpretation. *See Hurtado v. California*, 110 U.S. 516, 534 (1884) (absent clear reason, a court cannot assume a part of the Constitution is superfluous). The Founders did not draft the Constitution so that the President and Vice-President were directly elected by the majority of the popular vote. At most, "the sense of the people should operate in the choice of" President. *Id.* Instead, they created the Electoral College.

If the electors in Washington are required to vote for the candidate that wins the majority of the popular vote in Washington, the electors serve no purpose and are rendered superfluous. There can be none of the Hamiltonian-contemplated "deliberation", for there is nothing to deliberate. No "investigation" can occur if the electors are not allowed to is investigate other options. Insulating electors from the "mischief," "tumult," "disorder," "heats and ferments" of an election and the populace would be meaningless if the electors are forced to vote for the same people that won the majority vote by exploiting such heats, ferments, and disorder.

In Federalist No. 68, Hamilton admitted the Electoral College system he had helped create was not "perfect" but it was "at least excellent." *Id.* Through the early part of the Republic, the Founders realized some flaws in Article II § 1 and it was ultimately amended by the Twelfth Amendment, which changed the means by which the House and Senate voted. Despite the significant changes to the machinations of the Electoral College, nothing changed the fact that the electors were to remain an independent, deliberative, and investigative body. *See* IS THE UNIFORM FAITHFUL PRESIDENTIAL ELECTORS ACT CONSTITUTIONAL?, 2016 Cardozo L. Rev. De Novo 129, 132-133, 147-148.

RCW 29A.56.340 mandates electors vote not through deliberation and choice, but by deign of the state popular vote. This mandate renders superfluous the Electoral College and thereby violates Article II § 1 of the Constitution and the Twelfth Amendment.

2. *Washington's Binding Statute Violates the First Amendment.*

Alexander Hamilton explained that electors are to vote their free will and the Founders were fearful of and keen to prevent a demagogue:

> "dangerous ambition more often lurks behind the specious mask of zeal for the rights of the people than under the forbidden appearance of zeal for the firmness and efficiency of government. History will teach us that the former has been found a much more certain road to the introduction of despotism than the latter, and that of those men who have overturned the liberties of republics, the greatest number have begun their career by paying an obsequious court to the people; commencing demagogues, and ending tyrants."

Federalist No. 1, Hamilton.

Washington's elector binding statute, RCW 29A.56.300, enables demagogues, compels the electors, in contravention of the First Amendment, to vote for them, and eliminates debate among the electors on the vital public issue of whom should be elected President.

"Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995). Such speech "occupies the core of the protection afforded by the First Amendment." *Id.* "When a law burdens core political speech, we apply 'exacting scrutiny,' and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest." *Id.* at 347. There is a fundamental "right of qualified voters within a state to cast their ballots and have them counted." *U.S. v. Classic*, 313 U.S. 299, 315 (1941).

Any statute that requires people to vote a certain way eliminates political debate in violation of the First Amendment. The Electoral College's purpose is "deliberation" and "investigation." Federalist No. 68. Under Washington's binding statute, there is no deliberation or investigation to be done because the electors are bound to vote for specific candidates no matter what. Thus, RCW 29A.56.340 improperly burdens electors' core political speech. The law also improperly compels electors to vote in a certain way.

The electors are nominated and elected by private political parties. The state itself has

little state interest in determining who they are and what they believe. The state is not a political party and has no interest in whom people vote for. The state's only interest is running fair elections in which people are given as much opportunity to vote free from harassment. For example, Washington has a constitutional law that prohibits electioneering at a voting center or ballot drop location during the voting period beginning eighteen days before the election and ends the day of. *See* RCW 29A.84.520. This is constitutional, in part, because it protects the person's ability to vote for their candidate of choice. In contrast, RCW 29A.56.340 requires electioneering when it comes to the electors – it requires that electors who do not vote a certain way be forced to do so or pay a penalty (or even be removed by the other electors), thus ensuring someone votes the way the state seeks to compel them. It is difficult to imagine a more impermissible burden on political speech than requiring someone to vote for a specific candidate against their will. The concept is antithetical to the notion of democracy, free speech, and the Electoral College.

To uphold RCW 29A.56.340, this Court must find the challenged law advances a compelling state interest, though none exists, and is narrowly tailored. No such law could be sufficiently narrowly tailored because the law seeks to do that which cannot be done – compel someone to vote a specific way. Tailoring the law to require voters cast ballots for only a certain political party advances no state interest because the state itself has no interest in which political party governs it.

      3.     *Washington's Binding Statutes Violate the Fourteenth Amendment.*

According to the 2010 census, Washington's population is 7,170,351. *See* http://www.census.gov/quickfacts/table/PST045215/53.[3] Washington is entitled to twelve electors in the Electoral College – one for its ten Congressional Districts and two for each Senator. Wyoming's 2010 census population was 563,626.[4] Wyoming has three electoral

---

[3] This Court can take judicial notice of census statistics. *We Fong Yue Ting v. United States*, 149 U.S. 698, 734 (1893) (Brewer, J. dissenting); *Skolnick v. Bd. of Comm'rs*, 435 F.2d 361, 363 (7th Cir. 1970).
[4] *See* http://www.census.gov/quickfacts/table/PST045215/56.

votes – one for its at-large Congressional District and two for each Senator. Thus, though Washington is nearly thirteen times larger than Wyoming, it has only four times the electors as Wyoming. In other words, the Plaintiffs' votes are worth 1/4 of the Wyoming electors' votes.

Nothing in the Constitution requires or even contemplates that states are to award all of their electoral votes to the candidate who won the majority of the state's popular vote. To the contrary, the Constitution only allows states to conduct elections in a manner that is consistent with, and do not violate, other provisions of the Constitution, including the Fourteenth Amendment's equal protection clause. *See* Rhodes, 393 U.S. at 29 (though Article II § 1 "does grant extensive power to the States to pass laws regulating the selection of Electors …. these granted powers are always subject to the limitation that they may not be exercised in a way that violates other specific provisions of the Constitution. …. Nor can it be thought that the power to select Electors could be exercised in such a way as to violate express constitutional commands that specifically bar States from passing certain kinds of laws."). "When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter." *Bush v. Gore*, 531 U.S. 98, 104 (2000). "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id*. at 104-105. "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

Washington's binding statute and similar statutes across the country violate the Equal Protection Clause of the Fourteenth Amendment because they unconstitutionally dilute and debase the weight of Washington's electors' votes.

For the foregoing reasons, RCW 26A.56.340 violates Article II § 1 of the Constitution

MOTION BY PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION - 9

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 792-5230 • (206) 452-0655 FAX

and the First, Twelfth and Fourteenth Amendments. Because RCW 29A.56.340 of such violations, Plaintiffs have a substantial likelihood of succeeding on the merits.

### B. Irreparable Harm

Plaintiffs will suffer irreparable injury if a preliminary injunction is not issued because they will be forced to vote for Hillary Clinton and Tim Kaine in violation of their right to vote for whomever they choose. If they do not do so, they can be removed by their own party pursuant to RCW 26A.56.340 and not allowed to vote and will be fined $1,000. They will not be allowed to vote as electors again in this election and will be permanently deprived of their ability to cast a vote for the candidate of their choice. No monetary damages can compensate such a deprivation. The Plaintiffs spent myriad hours, expended great personal effort, and incurred personal expense to attend the various caucuses, assemblies, and conventions to become electors. Their fellow citizens voted for them as electors, in part, because they could be trusted to do what was right and vote not just for default candidates, but for someone whom Plaintiffs believe to be the best suited to run the country.

### C. Balance of Hardships

Defendants will not suffer any hardship if an injunction issues. Pursuant to RCW 29A.56.320, the parties, not the state or its citizens as a whole, elect presidential electors. The state would only be enjoined from allowing a violation of the Constitution, which is no hardship at all. Similarly, foregoing a $1,000 penalty for infringing a Washington citizen's exercise of their right to free political speech will work no harm on Washington.

In contrast, Plaintiffs will suffer great irreparable hardship. Plaintiffs became electors to become personally involved in the political process beyond simply voting on November 8, 2016. They believed they were well-suited to serve as electors to find and vote for the candidates best suited for the offices of President and Vice-President. If removed and replaced or forced to vote a certain way because of fear of suffering a monetary penalty, Plaintiffs will be barred from fulfilling their role as electors and voting for the most fit and qualified

MOTION BY PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION - 10

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 792-5230 • (206) 452-0655 FAX

candidates. And their right to exercise their free political speech on this signal issue that will only occur once in their lived will have been forever destroyed.

### D. Public Interest

The public has an interest in ensuring fit and competent leaders are elected. The majority of voters of this state and this country voted for Hillary Clinton and Timothy Kaine – people are who are fit and competent. However, there is great risk that if every elector in every state votes consistent with the popular vote in their respective states, Hillary Clinton and Timothy Kaine not only will not be elected, but people will be elected whom Plaintiffs believe, based on their deliberation and investigation, are neither fit nor competent. The public has an interest in our presidential electors following the dictates of the Constitution, which allows them to make independent, considered judgments about the President and Vice President and to cast their electoral votes accordingly. In contrast, the public has no interest in forcing Plaintiffs to vote for candidates who may not prevail simply for the sake of party loyalty. Rather, doing so harms the public's interest in making sure electors do their constitutional duty – elect fit, competent, and qualified candidates.

### VII. SECURITY IS UNNECESSARY

Rule 65(c) provides that no preliminary injunction may issue "except upon the giving of security by the applicant, in such sum as the court deems proper." In noncommercial cases, however, courts should consider the hardship a bond requirement would impose on the party seeking the injunction in addition to the expenses the enjoined party may incur as a result of the injunction. *See, e.g., Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1086 (N.D. Cal. 1997) (quoting *Elliott v. Kiesewetter,* 98 F.3d 47, 59 (3d Cir.1996)). "The Court may waive Rule 65(c)'s bond requirement when the balance of the equities weighs overwhelmingly in favor of the party seeking the injunction." *Id.*

MOTION BY PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION - 11

**IMPACT LAW GROUP PLLC**
1325 FOURTH AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 792-5230 • (206) 452-0655 FAX

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

A. Temporarily and preliminarily enjoining and restraining Defendants, and each of their principals, officers, agents, servants, employees, attorneys-in-fact, attorneys-in-law, contractors, consultants, distributors, and any and all persons under the control or in active concert or participation with Defendants, jointly or severally, who receive actual notice of the Court's order or judgment by personal service or otherwise, from enforcing RCW 29A.56.340, including in any way precluding Plaintiffs from voting for the candidates of their choice, fining them for doing so, or otherwise interfering with the vote of the electors on December 19, 2016;

B. Waiving the security requirement of Fed. R. Civ. P. 65(c);

C. Declaring unconstitutional RCW 29A.56.340 and any laws or regulations the intent, purpose, or effect of is to preclude Plaintiffs or other electors from exercising their judgment and free will in voting for whichever candidates Plaintiffs choose for President and Vice-President;

D. For such other and further relief as the Court deems just and proper under the circumstances.

DATED this 8th day of December, 2016.

**IMPACT LAW GROUP PLLC**

*/s/ Sumeer Singla*
Sumeer Singla, WSBA #32852
Jonah O. Harrison, WSBA #34576
*Attorneys for Plaintiffs*