## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| BRET CHIAFALO and LEVI GUERRA,<br><br>                                      Plaintiffs,<br><br>    v.<br><br>JAY INSLEE, in his official capacity as Governor of Washington, BOB FERGUSON, in his official capacity as Attorney General of Washington, and KIM WYMAN, in her official capacity as Washington Secretary of State,<br><br>                                      Defendants. | NO. 2:16-CV-01886-JLR<br><br>DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

## I.      INTRODUCTION

This Court should deny Plaintiffs' motion for temporary restraining order because they cannot meet their burden to obtain injunctive relief.

Article II, section 1 of the United States Constitution firmly places control over the appointment of presidential electors with the states. "*Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors*, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress . . . ." U.S. Const. art. II, § 1, cl. 2. (emphasis added). Washington has adopted laws to implement this constitutional mandate. While state law requires that electors pledge before the election to vote for the nominees of their party, Wash. Rev. Code § 29A.56.320, it does not invalidate an

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   electoral ballot or direct the State to remove an elector if the elector violates his pledge. Wash.

2   Rev. Code § 29A.56.340. Accordingly, no matter how Plaintiffs cast their electoral ballots on

3   December 19, their ballots will be submitted to Congress, along with the rest of Washington's

4   electoral votes, for determination of the next President. The only consequence state law

5   imposes for violation of an elector's pledge is a modest civil penalty ($1,000). *Id.* No court has

6   ever deemed such a requirement unconstitutional, and Plaintiffs' unprecedented claims have no

7   likelihood of success on the merits. It does not violate the Constitution for the State to attempt

8   to hold electors to their own voluntary pledges to follow the will of the voters.

9       Even if Plaintiffs' claims possessed any merit, there would still be no basis for a

10   temporary restraining order because Plaintiffs cannot show the other elements required for

11   preliminary relief, especially that they are "likely to suffer irreparable harm in the absence of

12   preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In seeking to

13   establish irreparable harm, Plaintiffs rely entirely on speculation. They admit that they may

14   well follow state law, eliminating even the possibility of injury. But even if they decide to

15   violate state law, they cite only two alleged harms. First, they claim that "they can be removed

16   by their own party . . . and not allowed to vote." Plaintiffs' Motion at 10. But Plaintiffs provide

17   no evidence whatsoever that their party is considering removing them, and even if they did,

18   their lawsuit is against state officials, not their party, and Plaintiffs seek no relief against their

19   party here. Plaintiffs' second claim of injury is that if they go against the will of the voters,

20   they "will be fined $1,000." *Id.* But even if Plaintiffs violate state law and a penalty is sought,

21   Plaintiffs would have an adequate remedy at that time because they could challenge the penalty

22   in an administrative proceeding or in court. There is simply no basis for the extraordinary

23   remedy of preliminary relief.

24   ## II.    FACTS RELEVANT TO MOTION

25       Under the authority granted to the States in Article II, section 1 of the United States

26   Constitution, the Washington Legislature has adopted statutes governing Washington's

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

2

presidential electors. Wash. Rev. Code § 29A.56. In a presidential election year, each major and each minor political party that nominates candidates for president and vice president "shall [also] nominate presidential electors for this state." Wash. Rev. Code § 29A.56.320. The party or convention must submit to the Secretary of State a certificate listing the names and addresses of the party's presidential electors. *Id*. The statute also requires that "[e]ach presidential elector shall execute and file with the secretary of state a pledge that, as an elector, he or she will vote for the candidates nominated by that party." *Id*. Both Plaintiffs submitted pledges that comply with this requirement. Augino Decl., Ex. B.

The parties' slates of presidential electors do not appear on the general election ballot. Wash. Rev. Code § 29A.56.320. Instead, the votes that Washington voters cast in the general election for candidates for president and vice president of each political party "shall be counted for the candidates for presidential electors of that political party." Wash. Rev. Code § 29A.56.320.[1]

Once the general election votes are canvassed and certified, the majority of Washington's popular vote for President and Vice President determines the party whose electors will serve in the Electoral College from Washington. Wash. Rev. Code § 29A.56.320, .330. The Secretary of State signs and submits a list of the winning party's electors to the Governor for signature. Wash. Rev. Code § 29A.56.330.

Hillary Clinton and Tim Kaine, candidates for the Democratic Party, won the Washington popular vote for president and vice president by more than 500,000 votes. Augino Decl., Ex. C at 2. The Democratic Party's slate of electors therefore will serve in the Electoral College from Washington. Wash. Rev. Code § 29A.56.320. Mr. Chiafalo and Ms. Guerra are on the Democratic Party's slate of electors. Augino Decl., Ex. A. The Democratic Party's

---

[1] Wash. Rev. Code § 29A.56.300 provides for a different system where electoral votes are tied to the national popular vote. This provision was adopted as contingent legislation and it would take effect only "when states cumulatively possessing a majority of the electoral votes have enacted this agreement . . . ." Wash. Rev. Code § 29A.56.300. This has not yet occurred.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

electors will convene at noon on December 19, 2016. Wash. Rev. Code § 29A.56.340; *see also* 3 U.S.C. § 7.

Federal law provides that "[e]ach State may, by law, provide for the filling of any vacancies which may occur in its college of electors when such college meets to give its electoral vote." 3 U.S.C. § 4. State law provides that "[i]f there is any vacancy in the office of an elector occasioned by death, refusal to act, neglect to attend, or otherwise, the electors present shall immediately proceed to fill [the vacancy] by voice vote, and plurality of votes." Wash. Rev. Code § 29A.56.340. For example, should there be a Party determination that a vacancy exists in that Party's slate of electors under party rules, the State Defendants would honor that determination and the resulting vacancy would have to be filled. *See* Augino Decl., Ex. D.

Once any vacancies are filled, the electors shall then "proceed to perform the duties required of them by the Constitution and laws of the United States." Wash. Rev. Code § 29A.56.340. Under the Twelfth Amendment, the electors "shall . . . vote by ballot for President and Vice-President . . . in distinct ballots." "[T]hey shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of government of the United States." U.S. Const., Amend. XII; *see also* 3 U.S.C. §§ 10, 11.

Under state law, "[a]ny elector who votes for a person or persons not nominated by the party of which he or she is an elector is subject to a civil penalty of up to one thousand dollars." Wash. Rev. Code § 29A.56.340. There is nothing in Wash. Rev. Code § 29A.56.340 or other state or federal statute, however, that directs any of the State Defendants or any other state official to reject an elector's vote if it is contrary to the elector's pledge. Unlike other states, Washington has not adopted a state law that mandates automatic resignation or forfeiture of the elector's office when an elector votes contrary to his or her pledge. *Cf.* Mich.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Comp. Laws § 168.47[2]; Minn. Stat. § 208.46[3]; N.C. Gen. Stat. § 163-212[4]; Okla, Stat. § 26-10-108.[5]

### III.   ARGUMENT

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Greren*, 553 U.S. 674, 689-90 (2008)). In each case, the court must balance the competing claims and consider the effects on each party, paying "'particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). The party seeking injunctive relief bears the burden of establishing that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20.

Plaintiffs rely on pre-*Winter* cases to articulate the test for whether a preliminary injunction is appropriate. Plaintiffs' Motion at 3. Under the Ninth Circuit's post-*Winter,* "sliding scale" approach, the court balances the elements so that a "stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). At "'an irreducible minimum,'" however, "'the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require

---

[2] Mich. Comp. Laws § 168.47 ("Refusal or failure to vote for the candidates for president and vice-president appearing on the Michigan ballot of the political party which nominated the elector constitutes a resignation from the office of elector, his vote shall not be recorded and the remaining electors shall forthwith fill the vacancy.")

[3] Minn. Stat. § 208.46 ("Except as otherwise provided by law of this state other than this chapter, the secretary of state may not accept and may not count either an elector's presidential or vice-presidential ballot if the elector has not marked both ballots or has marked a ballot in violation of the elector's pledge.")

[4] N.C. Gen. Stat. § 163-212 ("refusal or failure to vote for the candidates of the political party which nominated such elector shall constitute a resignation from the office of elector, his vote shall not be recorded, and the remaining electors shall forthwith fill such vacancy as hereinbefore provided.")

[5] Okla. Stat. §26-10-108 ("In the event any Presidential Elector fails to meet at the Governor's office at the prescribed time or refuses or fails to vote for the persons nominated for the offices of President and Vice President by the political party which nominated the Presidential Elector, it shall be the duty of the Electors present at the time and place aforesaid to appoint a person to fill such vacancy.")

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

litigation,'" in addition to establishing the other three factors, before relief may be granted. *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012) (quoting *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir.2009)).

Plaintiffs cannot meet their burden to obtain injunctive relief. Plaintiffs have shown no likelihood of success on the merits. They have mischaracterized the function and application of Wash. Rev. Code § 29A.56.340. And no court, anywhere, has adopted Plaintiffs' argument that the Constitution requires allowing electors to ignore the will of their state's voters. But, even if Plaintiffs could show a likelihood of success on the merits, they have failed to show the other elements required to obtain a temporary restraining order. In particular, Plaintiffs can show no likelihood of irreparable harm when the source of their claim is a potential monetary penalty that has not yet been imposed and Plaintiffs would have a variety of options to challenge the legality aside from this emergency proceeding.

**A.      Plaintiffs Cannot Prevail on the Merits of Their Claims**

     **1.      Washington Law Does Not Prevent Presidential Electors From Casting an Electoral Ballot for a Particular Candidate**

Plaintiffs' claims revolve around one fundamentally incorrect premise: that Washington law prevents presidential electors from casting electoral votes in a particular way. While it is true that state law requires each elector to submit a pledge that they will vote for the candidates nominated by their party, Wash. Rev. Code § 29A.56.320, and that the law provides a mechanism to penalize electors who fail to do so, Wash. Rev. Code § 29A.56.340, nothing in state law prevents electors from actually casting a ballot for the candidate of their choosing. *See generally* Wash. Rev. Code § 29A.56; *specifically* Wash. Rev. Code § 29A.56.340 ("any elector *who votes* for a person or persons not nominated . . . .").

In fact, unlike in other states, nothing in Washington law directs the State Defendants to remove an elector from a party's slate or reject an elector's ballot if they vote against their

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION NO.2:16-JLR

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  party pledge.[6] *Id.*; *contrast* Mich. Comp. Laws § 168.47; Minn. Stat. § 208.46; N.C. Gen. Stat.

2  § 163-212; Okla. Stat. §26-10-108. Instead, the only action that Wash. Rev. Code

3  § 29A.56.340 authorizes is a civil penalty against any elector who votes for a person not

4  nominated by the party of which he or she is an elector. Wash. Rev. Code § 29A.56.340. But

5  even this provision is discretionary under state jurisprudence, which places the imposition and

6  amount of a civil penalty within the sound discretion of a court or state agency. *See, e.g.*, *State*

7  *v. WWJ Corp.*, 88 Wash. App. 167, 169 (1997), *aff'd in part, rev'd in part on other grounds*,

8  138 Wash. 2d 595 (1999) ("trial court's imposition of a civil penalty within statutory limits is

9  reviewed for abuse of discretion"); *U.S. Steel Corp. v. State*, 65 Wash. 2d 385, 387 (1964)

10  (acknowledging state law gave discretion to state agency to assess interest and other penalties);

11  *Shanlian v. Faulk*, 68 Wash. App. 320, 328 (1992) (imposition of authorized penalty is within

12  agency's discretion).

13       Plaintiffs are simply wrong to claim that Wash. Rev. Code § 29A.56.340 prevents them

14  from casting their electoral ballots in any particular way. They are also wrong to imply that

15  State Defendants would take any action to prevent them from serving as a part of the slate of

16  Presidential electors for the Democratic Party or to invalidate their electoral ballots because of

17  any potential vote. Plaintiffs' claims fail on the merits.

18       **2.**    **Wash. Rev. Code § 29A.56.340 Withstands Constitutional Scrutiny**

19       Because Plaintiffs' claims on the merits can be rejected based on plain application of

20  Washington's statutes, this Court need not reach their constitutional arguments. *See Dep't of*

21  *Commerce v. U.S. House of Representatives*, 525 U.S. 316, 343-44 (1999) ("[I]f a case can be

22  decided on either of two grounds, one involving a constitutional question, the other a question

23  of statutory construction or general law, the Court will decide only the latter" (quoting

24  *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring))). But, even if this

25

26        [6] Nor have Plaintiffs pointed to anything suggesting that State Defendants would do so.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   Court were to consider their arguments, Wash. Rev. Code § 29A.56.340 withstands
2   constitutional scrutiny.

### a. The Constitution Provides Washington with Plenary Power to Appoint the State's Presidential Electors

Article II, section 1, clause 2 of the United States Constitution provides states with plenary power, subject only to other possible constitutional limitations, over the appointment of electors and the mode by which electors carry out their appointment. U.S. Const. art. II, § 1, cl. 2 ("Each State shall appoint, *in such Manner as the Legislature thereof may direct*, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress . . . .") (emphasis added); *Ray v. Blair*, 343 U.S. 214, 228 (1952) (subject to possible other constitutional limitations, states have a right to appoint electors in such manner as they choose); *McPherson v. Blacker*, 146 U.S. 1, 35 (1892) ("from the formation of the government until now the practical construction of the clause has conceded plenary power to the state legislatures in the matter of the appointment of electors"); *see also Gelineau v. Johnson*, 904 F. Supp. 2d 742, 748-49 (W.D. Mich. 2012) ("the states have great latitude in choosing electors and guiding their behavior").

Wash. Rev. Code § 29A.56.340 falls squarely within the State's plenary power. It sets the time and location at which the State's electors of president and vice president convene on the day fixed by Congress. Wash. Rev. Code § 29A.56.340. It sets the method by which vacancies in the office of elector are fulfilled. *Id.* It orders electors to "proceed to perform the duties required of them by the Constitution and laws of the United States." *Id.* It also, while not mandating a particular vote, provides a discretionary penalty against an elector who votes in a manner inconsistent with his or her party pledge. *Id.* Each of these provisions sets the mode and method by which electors act to fulfill the State's obligation in the Electoral College. *See Ray*, 343 U.S. at 224-25, 228. Moreover, the latter provision fulfills the State's legitimate legislative objective of facilitating the effective operation of democratic government by

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

providing a means to hold electors to their pledged party affiliation, thereby making it more likely an elector will vote consistent with the will of Washington's electorate. *See id.* at 226 ns. 14 and 15. Accordingly, Wash. Rev. Code § 29A.56.340 falls within the State's constitutional power to appoint presidential electors in such manner as the Legislature directs.

### b. Plaintiffs Do Not Have a Constitutional Right to Ignore the Will of the Voters in Casting Their Electoral Ballots

Assuming for the sake of argument that Wash. Rev. Code § 29A.56.340 does, in fact, require Plaintiffs to cast their electoral ballots in a specific manner, such a requirement would not violate the Twelfth or First Amendments as Plaintiffs contend.

First, contrary to Plaintiffs' assertions, Washington's electors do not have "a constitutional right [under the Twelfth Amendment] to vote for whomever they freely choose." Plaintiffs' Mot. at 2, 4-6. This argument has already been implicitly dismissed by the Supreme Court as inconsistent with the operation of the Electoral College, which places the power to govern electors in the individual states.

The Court in *McPherson* affirmed Michigan's power to elect presidential electors by congressional district rather than popular vote under article II, section 1 and the Twelfth Amendment of the Constitution. *McPherson*, 146 U.S. at 1, 42. In doing so, the Court summarized the history of the constitutional provisions, noting that the founders ultimately reconciled all countervailing views by leaving the power to the states. *Id.* at 27-29. And, in rejecting the idea that Michigan's method of election was contrary to the original object and purpose of the electoral system, the Court noted:

> Doubtless it was supposed that the electors would exercise a reasonable independence and fair judgment in the selection of the chief executive, but experience soon demonstrated that, whether chosen by the legislatures or by popular suffrage on general ticket or in districts, they were so chosen simply to register the will of the appointing power in respect of a particular candidate. In relation, then, to the independence of the electors, the original expectation may be said to have been frustrated. *But we can perceive no reason for holding that the power confided to the states by the constitution has ceased to exist because*

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

> *the operation of the system has not fully realized the hopes of those by whom it*
> *was created.*

*McPherson*, 146 U.S. at 36 (emphasis added) (citations omitted).

Similarly, the Court in *Ray* affirmed that neither article II, section 1 nor the Twelfth Amendment forbids a state from authorizing a political party to choose its nominees for elector and to set the elector qualifications in the form of a pledge to vote for the party's nominee. *Ray*, 343 U.S. at 231. In answering the question, the Court considered "the argument that the Twelfth Amendment demands absolute freedom for the elector to vote his own choice, uninhibited by the pledge." *Id.* at 228. The Court noted:

> It is true that the Amendment says the electors shall vote by ballot. But it is also
> true that the Amendment does not prohibit an elector's announcing his choice
> beforehand, pledging himself. The suggestion that in the early elections
> candidates for electors—contemporaries of the Founders—would have
> hesitated, because of constitutional limitations, to pledge themselves to support
> party nominees in the event of their selection as electors is impossible to accept.
> *History teaches that the electors were expected to support the party nominees.*
> *Experts in the history of government recognize the longstanding practice.*
> Indeed, more than twenty states do not print the names of the candidates for
> electors on the general election ballot. Instead in one form or another they allow
> a vote for the presidential candidate of the national conventions to be counted as
> a vote for his party's nominees for the electoral college. This long-continued
> practical interpretation of the constitutional propriety of an implied or oral
> pledge of his ballot by a candidate for elector as to his vote in the electoral
> college weights heavily in considering the constitutionality of a pledge, such as
> the one here required, in the primary.

*Id.* (emphasis added) (citations omitted). While the Court ultimately left open the question of whether such pledges are enforceable, *id.* at 230, nothing in the opinion suggests that they would not be. More importantly, nothing in the opinion suggests that electors have the constitutional right to operate independently from the will of the State's voters. *See id.* at 224-25 ("[Electors] act by authority of the state that in turn receives its authority from the federal constitution."). In fact, had the Court understood electors to have the constitutional right they

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  assert, it would not have made sense for the Court to have upheld a requirement that electors

2  sign a pledge in order to serve.

3     Second, Plaintiffs are incorrect to suggest that they have a constitutional right to reject

4  the view of the State's voters as to the qualifications of Presidential candidates. Plaintiffs' Mot.

5  at 2. Relying on a Hamiltonian view of the Electoral College, Plaintiffs assert that the electoral

6  system requires that electors remain an "independent, deliberative and investigative body." *Id.*

7  at 6. Popular musicals notwithstanding, Alexander Hamilton's views do not set the scope and

8  function of the Electoral College or the states' authority therein; only the United States

9  Constitution, federal law, and the courts' concomitant interpretation of those laws do so. *C.f.*

10  *McPherson*, 146 U.S. at 8 (recognizing that Hamilton's was but one "reconciled contrariety"

11  view when the original article two, section one of the Constitution was set). Nothing in the

12  Constitution or case laws suggests that individual electors have such authority or can ignore the

13  will of the State's voters.

14     Finally, in serving as presidential electors, Plaintiffs are not exercising their own

15  individual right to vote. *See McPherson*, 146 U.S. at 38-39 ("The first section of the fourteenth

16  amendment does not refer to the exercise of the elective franchise . . . . The right to vote

17  intended to be protected [by the second section] refers to the right to vote as established by the

18  laws and constitution of the state."). Plaintiffs exercised that fundamental right when they cast

19  a ballot in the general election on November 8. Instead, when Plaintiffs convene as part of

20  Washington's Electoral College, they are acting on behalf of the State of Washington and its

21  people who by majority popular vote chose the Democratic Party's nominees, Hillary Clinton

22  and Tim Kaine, for President and Vice President, respectively. Thus, Plaintiffs' references and

23  arguments asserting constitutional burdens to their "fundamental right" to cast an electoral

24  ballot are significantly misplaced. *See* Plaintiffs' Mot. at 2, 6-8.[7] Moreover, while Plaintiffs

25

26     [7] This case is significantly different from *Williams v. Rhodes*, 393 U.S. 23, 31 (1968), which invalidated a state system that all but prevented minor political parties and candidates from accessing the presidential ballot

---

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

assert a First Amendment right to speak through their electoral votes, no court has held that the First Amendment extends to the casting of an electoral vote. And, to the extent Plaintiffs claim an inability to speak their personal views, there is nothing in Wash. Rev. Code § 29A.56.340 or the State's other laws that prevents Plaintiffs from doing so.

### c. Washington's "Winner Take All Approach" to Electoral Votes Does Not Implicate the Fourteenth Amendment

Plaintiffs also assert a variety of reasons why Washington's electoral system violates the Fourteenth Amendment. Plaintiffs' Mot. at 8-10. All ring hollow.

First, Plaintiffs suggest that because Washington's population is thirteen times larger than Wyoming's, yet Washington has only four times the number of electors, the electoral system unconstitutionally dilutes Plaintiffs' votes. Plaintiffs' Mot. at 8-9. But it is the Constitution itself that sets the number of electors that each state receives. U.S. Const., art. II, § 1, cl. 2. (setting each state's number of electors equal to the whole number of Senators and Representatives to which the state is entitled). How can the Constitution be unconstitutional?

Second, Plaintiffs argue that Washington's electoral system unconstitutionally dilutes and debases the weight of Washington's electors' votes by requiring a "winner take all system" based on a majority of the State's popular vote. Plaintiffs' Mot. at 9. In making this argument, Plaintiffs provide no explanation for how this is so. *Id.* Moreover, it is unclear how striking Wash. Rev. Code § 29A.56.340 would solve Plaintiffs' alleged problem as that statute does not govern allocation of Washington's electoral votes. Finally, it is unclear what system Plaintiffs want, as any other system for allocating electoral votes would necessarily allocate some votes to the Republican Party's candidates, Donald Trump and Mike Pence, whose election Plaintiffs ultimately seek to prevent. It is Plaintiffs' burden to establish a constitutional violation and they have failed to do so here.

---

on the grounds that it "heavily burdened" the people's right to vote for candidates other than those belonging to the two major political parties.

DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION NO.2:16-JLR

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

In sum, Plaintiffs cannot succeed on the merits of their claims. Washington law does not prevent Plaintiffs from casting their electoral ballots in any particular manner. But, even it did, doing so falls within the State's plenary constitutional power to appoint presidential electors in such manner as the Legislature directs. Plaintiffs' request for injunctive relief should be denied.

**B.    Plaintiffs Cannot Obtain Injunctive Relief Based on Speculative, Premature Claims**

Actual immediate irreparable injury is a prerequisite to preliminary injunctive relief. *See, e.g.*, *All. for the Wild Rockies*, 632 F.3d at 1135; *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury" to obtain relief. *Boardman*, 822 P.3d at 1022 (quoting *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original). Mere possibility of harm is not enough. *Winter*, 555 U.S. at 22. Moreover, financial injury will not constitute irreparable harm if adequate relief is available. *Goldie's Bookstore, Inc. v. Superior Court of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984). Here, Plaintiffs cannot meet these requirements as they base their claims on a speculative series of events, including a possible threat of financial penalty, that have not occurred and many of which are outside the State Defendants' control.

Plaintiffs cannot say with certainty what will happen in the days leading up to the convening of Washington's electoral college on December 19, much less what will happen on that day or thereafter. For example, the Democratic Party submitted Plaintiffs' names among the list of individuals elected to serve as the Party's slate of Presidential Electors. Augino Decl., Ex. A. No one knows whether the Democratic Party will take any action to revise its slate of electors before December 19 or whether the Democratic Party will assert that the act of

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

being faithless to the Party's Presidential Nominees on December 19 creates a vacancy under the Party's rules.[8] Further, Plaintiffs admit they do not know who they will cast their electoral vote for on December 19. Plaintiffs' Mot., Ex. A at ¶ 10 (Chiafalo Decl.); Plaintiffs' Mot., Ex. B. at ¶ 9 (Guerra Decl.). Plaintiffs may choose in fact to cast their electoral vote for the Democratic Presidential Nominees, Hillary Clinton and Tim Kaine, making any enforcement of the civil penalty provision in Wash. Rev. Code § 29A.56.340 unnecessary. Finally, even if Plaintiffs remain on the Democratic Party's slate of electors and choose to cast their vote for candidates other than the Party's Presidential Nominees, no one can say with certainty when or whether the civil penalty would be enforced or in what amount, as it has never before occurred in Washington State. Enjoining State Defendants from enforcing Wash. Rev. Code § 29A.56.340 "based only on a possibility" of alleged harm to Plaintiffs from a series of speculative events is inconsistent with the United States Supreme Court's characterization of injunctive relief as "extraordinary." *Winter*, 555 U.S. at 22; *Boardman*, 822 P.3d at 1022.

Moreover, the only potential consequence if an elector votes against his or her pledge is a monetary penalty, but a monetary penalty is not an irreparable harm. Even the possibility of onerous civil penalties does not threaten irreparable harm where such assessments become final and payable only after full review. *See, e.g.*, *Thunder Basin Coal v. Reich*, 510 U.S. 200, 217-18 (1994); *Hobby Lobby v. Sebelius*, 133 S. Ct. 641, 643 (2012) (Justice Sotomayor, in chambers) (concluding that even the possibility of significant fines was not enough to amount to irreparable harm); RCW 34.05.570 (3), (4) (providing a mechanism for judicial review of any agency order or action, which would include the imposition of a civil penalty).

The harm to Plaintiffs is speculative and it is not irreparable. As a result, Plaintiffs' motion should be denied.

---

[8] While Plaintiffs assert they can be removed by their own party, Plaintiffs' Mot. at 10, Plaintiffs have not named the Democratic Party in this lawsuit and are not seeking to enjoin the Democratic Party from taking any action.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## C.   The Remaining Injunctive Elements Weigh Against Plaintiffs

Because Plaintiffs cannot show they are likely to succeed on the merits or that they will suffer irreparable injury, this Court need not reach the remaining elements for obtaining injunctive relief. *C.f. Nevada Green Party v. Cegavske*, No. 2:16-cv-01951-JAD-CWH, 2016 WL 4582050, at *3 (D. Nev. Sept. 1, 2016). But, even if this Court were to consider those factors, the equities do not support granting Plaintiffs extraordinary injunctive relief.

As explained above, there is no clear harm to Plaintiffs. State law would not invalidate their electoral ballots should they choose not to comply with their party pledge. And any financial penalty that Plaintiffs may incur by not complying could be subject to legal challenge and judicial review. In contrast, the State and the public will be substantially prejudiced if Plaintiffs receive their requested relief. While Plaintiffs can challenge any monetary penalty later if one is ever imposed, there is no mechanism for the State or its voters to alter electoral votes after they are cast. The State has a legitimate, important interest in the effective operation of its electoral system and in ensuring that the will of its people is given effect. In November, the majority of Washington's voters cast a ballot for Hillary Clinton and Tim Kaine under the expectation that, if those candidates won a majority of the votes, Washington's electoral votes would be cast in their favor. Now, on the eve of the State's Electoral College convening, Plaintiffs seek to alter that expectation under a misguided and misinformed application of the law. The equities do not weigh in their favor.

/ / /

/ / /

/ / /

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1

### IV.    CONCLUSION

2

For these reasons, State Defendants respectfully ask this Court to deny Plaintiffs'

3

request for extraordinary relief.

4

DATED this 12th day of December 2016.

5

6

ROBERT W. FERGUSON
*Attorney General of Washington*

7

NOAH G. PURCELL, WSBA 43492
*Solicitor General*

8

 s/ Callie A. Castillo

9

CALLIE A. CASTILLO, WSBA 38214

 s/ Rebecca R. Glasgow

10

REBECCA R. GLASGOW, WSBA 32886
*Deputy Solicitors General*

11

Office of the Attorney General

12

PO Box 40100
Olympia, Washington 98504-0100

13

(360) 664-0869
CallieC@atg.wa.gov

14

RebeccaG@atg.wa.gov

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

16

1    **CERTIFICATE OF SERVICE**

2        I certify, under penalty of perjury under the laws of the state of Washington, that I

3    electronically filed a true and correct copy of the foregoing document with the United States

4    District Court ECF system, which will send notification of the filing to the following:

5

6        Sumeer Singla
         Jonah O. Harrison
7        1325 Fourth Avenue, Suite 1400
         Seattle, WA  98101
8        sumeer@impactlawgroup.com
         jonah@impactlawgroup.com

9

10       Robert J. Maguire
         Harry J. F. Korrell
11       Davis Wright Tremaine LLP
         1201 Third Avenue, Suite 2200
12       Seattle, WA  98101-3045
         robmaguire@dwt.com
13       harrykorrell@dwt.com

14       Chad A. Readler
         325 John H. McConnell boulevard, Suite 600
15       Columbus, OH  43215-2673
         careadler@jonesday.com
16

17       Robert A. McGuire, III
         Robert McGuire Law Firm
18       2703 Jahn Avenue NW, Suite C-7
         Gig Harbor, WA  98335
19       ram@lawram.com

20

21       DATED this 12th day of December 2016, at Olympia, Washington.

22

                        s/ Kristin D. Jensen
23                      KRISTIN D. JENSEN
                        Confidential Secretary
24

25

26

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION
NO.2:16-JLR

17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200