UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| P. BRET CHIAFALO, et al., | CASE NO. C16-1886JLR |
| Plaintiffs, | ORDER |
| v. | |
| JAY INSLEE, et al., | |
| Defendants. | |

## I.  INTRODUCTION

Before the court is Plaintiffs P. Bret Chiafalo and Levi Guerra's motion for a temporary restraining order ("TRO") and preliminary injunction (collectively, "preliminary injunctive relief").  (TRO/PI Mot. (Dkt. # 2).)  Defendants in this lawsuit are three Washington State officials:  Jay Inslee, in his official capacity as Governor; Bob Ferguson, in his official capacity as Attorney General; and Kim Wyman, in her official capacity as Secretary of State (collectively, "the State").  (Compl. (Dkt. # 1) ¶¶ 1.3-1.5.) The State opposes Plaintiffs' motion.  (State Resp. (Dkt. # 18).)

ORDER- 1

In addition, there are two motions to intervene before the court: the Washington State Republican Party's (the "Republican Party") motion to intervene (*see* Rep. Party MTI (Dkt. # 9)), and President-elect Donald J. Trump and Donald J. Trump for President, Inc.'s (collectively, "the Campaign") motion to intervene (Campaign MTI (Dkt. # 13)). Due to the rapid developments in this case, the Republican Party and the Campaign (collectively, "Putative Intervenors") filed an opposition to Plaintiffs' motion for a TRO and preliminary injunction, which they ask the court to consider if the court grants their motions to intervene. (Put. Intervenors Resp. (Dkt. # 16).)

The court has considered the parties' and Putative Intervenors' written submissions and oral arguments, the relevant portions of the record, and the applicable law. The court held a hearing on Plaintiffs' motion for preliminary injunctive relief on December 14, 2016. (12/14/16 Min. Entry (Dkt. # 27).) Following oral argument, the court DENIED Plaintiffs' motion for preliminary injunctive relief and indicated that this written order would follow to more thoroughly articulate the court's reasoning.

## II.   BACKGROUND

Plaintiffs are two presidential electors for the State of Washington who attack the constitutionality of Washington's Presidential Electors Statute, RCW 29A.56.300 *et seq.* (Compl. ¶¶ 1.1-1.2, 2.2.) In Washington, "each major political party and each minor political party or independent candidate convention that nominates candidates for president and vice president" also nominates presidential electors. RCW 29A.56.320. In tallying votes during the general election, the State counts each vote for president and vice president as a concurrent vote for the presidential electors of that political party. *Id.*

In other words, the electors nominated by the political party that wins Washington's general election become the electors for the State. *See id.* Because Hillary Clinton and Tim Kaine, the Democratic candidates for president and vice-president, respectively, won the general election in Washington (*see* Augino Decl. (Dkt. # 19) ¶ 4, Ex. C at 2), Plaintiffs, as the Democratic Party's nominees for presidential electors, became presidential electors (*see* Augino Decl. ¶ 2, Ex. A at 1; *see also* Compl. ¶¶ 1.1-1.2, 3.2, 3.4; Chiafalo Decl. (Dkt. # 1-5) ¶ 6; Guerra Decl. (Dkt. # 1-6) ¶ 6).

Plaintiffs believe that President-elect Donald Trump and Vice President-elect Michael Pence are unfit for office (Compl. ¶¶ 3.7-3.8; Chiafalo Decl. ¶ 9; Guerra Decl. ¶ 8), and that it is therefore "in the best interests of Washington and the United States to prevent Trump/Pence from taking office." (Chiafalo Decl. ¶ 10; Guerra Decl. ¶ 9). To attain that end, Plaintiffs seek "the freedom to vote for any person whom [they] feel is the most viable, fit, and qualified." (Chiafalo Decl. ¶ 10; Guerra Decl. ¶ 9.) With this "freedom," Plaintiffs—in consultation with other presidential electors around the nation—intend to either vote for a president and vice-president who will obtain a majority of electoral votes or, at a minimum, block the current candidates from obtaining a majority of electoral votes. (Chiafalo Decl. ¶ 11, Guerra Decl. ¶ 10); *see also* U.S. Const. amend. XVII.

Plaintiffs challenge two provisions of the Presidential Electors Statute. (*See generally* Compl.) First, the Statute requires each presidential elector to "execute and file with the secretary of state a pledge that, as an elector, he or she will vote for the candidates nominated by that party." RCW 29A.56.320. Plaintiffs signed such a pledge,

which reads, "I, [name of elector], do hereby pledge that I will vote for the candidates nominated by the Democratic Party for President of the United States and Vice President of the United States." (Augino Decl. ¶ 3, Ex. B ("Elector Pledges") at 2, 4; *see also* Chiafalo Decl. ¶ 4, Guerra Decl. ¶ 4.)  Second, the Statute authorizes the State to impose a "civil penalty of up to" $1,000.00 on "[a]ny elector who votes for a person or persons not nominated by the party of which he or she is an elector." RCW 29A.56.340.  Ms. Guerra attests that neither she nor her family can afford to pay such a penalty. (Guerra Decl. ¶ 12.)  Plaintiffs contend that these restrictions violate Article II and the First, Twelfth, and Fourteenth Amendments to the United States Constitution. (*See* Compl. ¶¶ 2.2, 3.17-3.18.)

Plaintiffs move for preliminary injunctive relief that precludes the State "from enforcing RCW 29A.56.340, removing or replacing any electors for any reason other than death or physical absence of the elector, or otherwise influencing or interfering with the electors [sic] votes on December 19, 2016, including threatening to or actually imposing any civil penalty against Plaintiffs based on the vote they cast or say they are going to cast." (Prop. Order (Dkt. # 2-1) at 5.)  That motion is now before the court.

### III.   ANALYSIS

**A.   Legal Standard**

A plaintiff seeking a TRO in federal court must meet the standards for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); Fed. R. Civ. P. 65.  To obtain either form of preliminary injunctive relief, Plaintiffs must establish that (1) they are likely to succeed on the merits,

(2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Preliminary injunctive relief is also "appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," provided the plaintiff also demonstrates that irreparable harm is likely and that the injunction is in the public interest.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

**B.      Plaintiffs' Motion for Preliminary Injunctive Relief**

Plaintiffs fail to show serious questions going to the merits of their claims or irreparable injury, both of which are necessary to warrant preliminary injunctive relief.

1. Merits

Plaintiffs have demonstrated neither a likelihood of success on the merits, *Winter*, 555 U.S. at 20, nor "serious questions going to the merits" of their claims, *Cottrell*, 632 F.3d at 1135.  As a threshold matter, Plaintiffs' merits-based argument relies heavily on the false premise that Plaintiffs' electoral votes will be disallowed or not counted if Plaintiffs fail to vote for the Democratic nominees.[1]  (*See* TRO/PI Mot. at 4-10.)  For

---

[1] Putative Intervenors likewise base the majority of their argument on the premise that the State can remove Plaintiffs or decline to count their votes if they fail to vote for their party's nominees.  (*See generally* Put. Intervenors Resp.)  Those inaccuracies appear to be relics of similar proceedings in United States District Court for the District of Colorado.  (*Compare* Compl.; TRO/PI Mot.), *with Baca v. Hickenlooper Jr.*, No. 1:16-cv-2986-WYD-NYW (D. Colo.), Dkt. ## 1-2.  Colorado's presidential elector statute, unlike Washington's comparable law, mandates that "[e]ach presidential elector . . . vote for the presidential candidate and, by separate ballot, vice-presidential candidate who received the highest number of votes at the

instance, Plaintiffs acknowledge that the Supreme Court has held that "requiring electors to sign a pledge to certain candidates was valid and constitutional" (*id.* at 4 (citing *Ray v. Blair*, 343 U.S. 214, 220-21 (1952))), but they contend that *Ray* supports the conclusion that Washington's law exceeds constitutional bounds by violating "'an assumed constitutional freedom of the elector under the Constitution, Art. II, § 1, to vote as he may choose in the [E]lectoral [C]ollege'" (*id.* at 5 (quoting *Ray*, 343 U.S. at 229); *see also* TRO/PI Mot. at 9 (arguing that "Washington's binding statute . . . violate[s] the Equal Protection Clause of the Fourteenth Amendment because [it] unconstitutionally dilute[s] and debase[s] the weight of Washington's electors' votes")). Washington has no law precluding Plaintiffs from voting as they choose—and having those votes counted—in the Electoral College. *See* RCW 29A.56.320, .340. The only potential State-imposed repercussion before the court is the discretionary civil penalty of up to $1,000.00. *See* RCW 29A.56.340; (*see also* TRO/PI Reply at 5 ("If Defendants are conceding they will not impose the civil penalty if Plaintiffs chose to vote for a candidate other than the Democratic Presidential Nominees, they are stipulating to the relief requested by Plaintiffs.").)

---

preceding general election in [Colorado]." Colo. Rev. Stat. § 1-4-304(5). Washington law lacks this mandatory language, *see* RCW 29A.56.340, and therefore the court finds inapplicable and unpersuasive Plaintiffs' and Putative Intervenors' arguments that posit statutorily compelled electoral votes.

The court notes that the Honorable Wiley Y. Daniel denied a request to preliminarily enjoin Colorado's law, which is considerably more coercive than Washington's. *Baca*, No. 1:16-cv-2986-WYD-NYW, Dkt. # 19. Analogous proceedings challenging California law are ongoing before the Honorable Edward J. Davila in the Northern District of California, but Judge Davila has not yet ruled on the motion for preliminary injunctive relief. *Koller v. Brown*, No. 5:16-cv-07069-EJD (N.D. Cal.); *see also* Cal. Elec. Code. §§ 6906, 18002.

Having clarified Washington's law, the court finds their argument based on Article II and the Twelfth Amendment and their argument based on the Fourteenth Amendment to warrant minimal discussion. Although it does not squarely address the issue, *Ray* implies that the Supreme Court does not consider Article II and the Twelfth Amendment to "demand[] absolute freedom for the elector to vote his own choice." 343 U.S. at 228; *see also id.* at 226-29 nn.14-16 (discussing the history of electors serving merely to register the will of the voters of their state as expressed through the general election). Plaintiffs have made no showing that the coercive impact of a potential civil penalty is so coercive that it offends the electoral system. Plaintiffs' Fourteenth Amendment argument is based exclusively on the impact of Washington's "binding" statute (TRO/PI Mot. at 8-10), but Washington's statute does not bind its voters, *see* RCW 29A.56.320, .340. The court concludes that both arguments are unlikely to succeed on the merits.

Plaintiffs' First Amendment argument warrants deeper analysis (*see* TRO/PI Mot. at 6-8; *see also* TRO/PI Reply (Dkt. # 22) at 3-4), especially in light of the Ninth Circuit's permissive case law regarding preliminary injunctive relief to protect First Amendment rights, *see Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002), *abrogated on other grounds by Winter*, 555 U.S. 7. In their briefing and at oral argument, Plaintiffs identified no authority for the proposition that their electoral vote implicates their First Amendment rights. (*See* TRO/PI Mot. at 6-8.) Relevant legal authority characterizes electors' role as "ministerial," *Thomas v. Cohen*, 262 N.Y.S. 320, 326 (Sup. Ct. 1933), limits the context in which the First Amendment protects individuals performing their official, governmental duties, *see Garcetti v. Ceballos*, 547 U.S. 410,

ORDER- 7

421-22 (2006); *Ray*, 343 U.S. at 224-25 ("[Electors] act by authority of the state that in turn receives its authority from the federal constitution."); *id.* at 226-29 nn.14-16, and confers immense discretion to the states in the appointment of electors, *see* U.S. Const. art. II, § 1, cl. 2 ("Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors . . . ."); *Bush v. Gore*, 531 U.S. 98, 104 (2000) (citing *McPherson v. Blacker*, 146 U.S. 1 (1892)) (discussing the "plenary" nature of "the state legislature's power to select the manner for appointing electors"); *Williams v. Rhodes*, 393 U.S. 23, 34 (1968) ("[T]he State is left with broad powers to regulate voting, which may include laws relating to the qualification and functions of electors."). Furthermore, Plaintiffs chose to stand for nomination as an elector for their party, subject to the rules and limitations that attend the position. (Chiafalo Decl. ¶ 3; Guerra Decl. ¶ 3.) They also retain the ability to step down as electors without penalty. *See* RCW 29A.56.340 (contemplating filling vacancies caused by "refusal to act" or "neglect to attend"). The court therefore concludes that it is unlikely that casting electoral ballots implicates Plaintiffs' First Amendment rights.

Finally, even assuming the First Amendment extends to electoral balloting, the only State-imposed deterrent to electors voting as they choose is a potential $1,000.00 civil penalty. *See* RCW 29A.56.340. Several compelling State interests likely justify the minimal burden imposed by a discretionary civil penalty of up to $1,000.00. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)) (directing courts "considering a challenge to a state election law" to perform a balancing inquiry that weighs "'the character and magnitude of the asserted injury to the

rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights'"); *Williams*, 393 U.S. at 32 ("[T]he State does have an interest in attempting to see that the election winner be the choice of a majority of its voters.").[2]

The court concludes that Plaintiffs have failed to show "serious questions going to the merits" of their claims. *Cottrell*, 632 F.3d at 1135. This conclusion warrants denial of Plaintiffs' request for preliminary injunctive relief. *See id.*

2. <u>Irreparable Harm</u>

Plaintiffs also fail to demonstrate that they are likely to suffer irreparable harm, and this conclusion constitutes an independently sufficient reason to deny their request for preliminary injunctive relief. *See Dex Media W., Inc. v. City of Seattle*, 790 F. Supp. 2d 1276, 1280 (W.D. Wash. 2011) ("[U]nder either the four-part test in *Winter* or the sliding scale test formulated in *Cottrell*, Plaintiffs are required to demonstrate a likelihood of irreparable injury and that the injunction is in the public interest." (italics added)); *Kotok v. Homecomings Fin., LLC*, No. C09-0662RSM, 2009 WL 1652151, at *2

---

[2] Plaintiffs assert that strict scrutiny applies to voting-related restrictions (*see* TRO/PI Mot. at 7), but "not every voting regulation is subject to strict scrutiny," *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016). Rather, the court employs a balancing test, and strict scrutiny only applies when the burden on First or Fourteenth Amendment rights is "severe." *Id.* The court rejects Plaintiffs' argument that strict scrutiny would apply to RCW 29A.56.340. *See Dudum v. Arntz*, 640 F.3d 1098, 1106 (9th Cir. 2011) ("We have repeatedly upheld as 'not severe' restrictions that are generally applicable, even-handed, politically neutral, and . . . protect the reliability and integrity of the election process." (internal quotations omitted) (alteration in original)).

(W.D. Wash. June 12, 2009) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004)) ("The showing of irreparable harm is considered 'the single most important prerequisite for the issuance of a preliminary injunction.'"). In support of the irreparable harm element, Plaintiffs make the following argument:

> Plaintiffs will suffer irreparable injury if a preliminary injunction [or TRO] is not issued because they will be forced to vote for Hillary Clinton and Tim Kaine in violation of their right to vote for whomever they choose. If they do not do so, they can be removed by their own party pursuant to RCW 26A.56.340 [sic] and not allowed to vote and will be fined $1,000. They will not be allowed to vote as electors again in this election and will be permanently deprived of their ability to cast a vote for the candidate of their choice. No monetary damages can compensate such a deprivation. The Plaintiffs spent myriad hours, expended great personal effort, and incurred personal expense to attend the various caucuses, assemblies, and conventions to become electors. Their fellow citizens voted for them as electors, in part, because they could be trusted to do what was right and vote not just for default candidates, but for someone whom Plaintiffs believe to be the best suited to run the country.

(TRO/PI Mot. at 10; *see also* TRO/PI Reply at 4-7.)

Most of the potential repercussions that Plaintiffs avowedly fear and seek to avoid are either unsupported or contradicted by the law or the record. *See* RCW 29A.56.320, .340. Contrary to Plaintiffs' citation, RCW 29A.56.340 does not allow a "party"—or the State—to remove presidential electors for being unfaithful to the statewide results of the general election. *See* RCW 29A.56.340. Furthermore, although Plaintiffs have each signed pledges to vote for the Democratic Party's nominees (Elector Pledges at 2, 4), "no matter how Plaintiffs cast their electoral ballots on December 19, [2016,] their ballots will be submitted to Congress, along with the rest of Washington's

ORDER- 10

electoral votes, for determination of the next President" (State Resp. at 2). Indeed, Washington law expressly contemplates that an elector may "vote[] for a person or persons not nominated by the party of which he or she is an elector." RCW 29A.56.340. Plaintiffs are therefore capable of opting not to "be permanently deprived of their ability to cast a vote for the candidate of their choice." (TRO/PI Mot. at 10.) Similarly, they may "do what [they feel is] right and vote not just for default candidates, but for someone whom Plaintiffs believe to be the best suited to run the country." (*Id.*; *see also* TRO/PI Reply at 5.)

Plaintiffs have, however, identified one provision of Washington law that has a coercive impact on electors: RCW 29A.56.340 provides for a civil penalty of up to $1000.00 if Plaintiffs vote for anyone other than their party's nominees. (*See* TRO/PI Mot. at 10.) However, "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Furthermore, the prospect of a civil penalty is speculative at this juncture. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("[A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."). Plaintiffs have not yet decided for whom they will cast their electoral votes. (*See* Chiafalo Decl. ¶ 10; Guerra Decl. ¶ 9.) Even if Plaintiffs vote for candidates other than Hillary Clinton and Tim Kaine, the State may elect to pursue a nominal civil penalty

//

//

or no civil penalty.[3]  *See* 29A.56.340 (subjecting an elector who declines to vote for her party's nominee to a civil penalty of "up to one thousand dollars").  Accordingly, the court cannot conclude that Plaintiffs are "likely to suffer irreparable harm in the absence of preliminary relief."  *Winter*, 555 U.S. at 20.

Plaintiffs also argue that the mere potential of a monetary penalty has a chilling impact on Plaintiffs' ability to exercise their First Amendment rights.  (*See* TRO/PI Reply at 4); *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008) ("Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm."), *rev'd on other grounds sub nom. Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134 (2011); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); (*see also* Guerra Supp. Decl. (Dkt. # 25) ¶¶ 3-6 (professing an inability to pay a $1,000.00 fine and stating that the threat of such a fine has intimidated Ms. Guerra and "originally made [her] seriously consider whether I should vote according to my conscience, rights[,] and duties").)  In the Ninth Circuit, "'a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim.'"  *Sammartano*,

---

[3] The speculative nature of Plaintiffs' alleged injury does not, however, call into question Plaintiffs' constitutional standing.  *See Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006-07 (9th Cir. 2003) (discussing the permissive gloss applied to constitutional standing doctrine in First Amendment challenges).

303 F.3d at 973 (quoting *Viacom Int'l, Inc. v. F.C.C.*, 828 F. Supp. 741 (N.D. Cal. 1993)).

Although "demonstrating the existence of a colorable First Amendment claim" is less exacting than the *Winter* and *Cottrell* standards applied above, *see supra* § III.B.1., the court finds that Plaintiffs fail to demonstrate the existence of a colorable First Amendment claim for the same reasons as it concluded that Plaintiffs are unlikely to succeed on the merits, *see Sammartano*, 303 F.3d at 973; *see also Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989) ("[T]he assertion of First Amendment rights does not automatically require a finding of irreparable injury . . . ."); *see also Dex Media*, 790 F. Supp. 2d at 1280 (acknowledging that in the First Amendment context, the "determination of whether Plaintiffs have demonstrated a likelihood of irreparable harm . . . hinges in part on whether Plaintiffs have demonstrated a likelihood of success on the merits of their First Amendment claim"). Moreover, because the only potential harm to Plaintiffs is pecuniary, preliminary injunctive relief would have no impact on Plaintiffs' decision-making calculus. Whether or not the court preliminarily enjoins the State from enforcing the $1,000.00 civil penalty, Plaintiffs will have to (1) decide for whom to cast their electoral vote on December 19, 2016, and subsequently (2) pay the penalty if (a) Plaintiffs do not vote for their party's nominees, (b) the State imposes and seeks to collect a penalty, and (c) the court ultimately concludes that RCW 29A.56.340 is constitutional. *See* RCW 29A.56.340. In other words, even assuming that casting an electoral vote is an exercise of First Amendment freedoms, preliminary injunctive relief would not mitigate the chilling effect of the discretionary statutory penalty. This

reasoning tracks the rationale for concluding that monetary losses typically do not constitute irreparable harm.[4]  *See Sampson v. Murray*, 415 U.S. 61, 90 (1974).

Based on the foregoing analysis, the court concludes that preliminary injunctive relief would not prevent likely irreparable harm because the potential $1,000.00 civil penalty is economic and speculative, and does not chill Plaintiffs' First Amendment rights.  *See* RCW 29A.56.340.  This conclusion alone warrants denial of Plaintiffs' request for a TRO and preliminary injunction.  *See Winter*, 555 U.S. at 20; *Cottrell*, 632 F.3d at 1134-35; *Dex Media*, 790 F. Supp. 2d at 1280; *Kotok*, 2009 WL 1652151, at *2. Because Plaintiffs have shown neither a likelihood of success on the merits nor a likelihood of irreparable harm, the court denies their motion for preliminary injunctive relief.[5]

## C.   Putative Intervenors' Motions to Intervene

At oral argument, Plaintiffs indicated that they do not oppose Putative Intervenors' intervention for the limited purpose of deciding this motion.  The State does not oppose the motions to intervene.  (*See* Rep. Party MTI at 1 n.1; Campaign MTI at 1 n.1.)

---

[4] "[F]inancial losses that would be unrecoverable due to [the State's] Eleventh Amendment sovereign immunity do constitute irreparable injury."  *A Woman's Friend Pregnancy Res. Clinic v. Harris*, 153 F. Supp. 3d 1168, 1215 (E.D. Cal. 2015).  However, Plaintiffs have not yet cast their electoral ballots, the State has not determined whether to impose a civil penalty, and there is no way to tell when such a civil penalty might be due, particularly because there is no precedent for such a civil penalty since Washington enacted the provision of RCW 29A.56.340 that authorizes the State to impose a fine.  Accordingly, this potentiality is too speculative to be considered "likely," or "immediate."  *Caribbean Marine*, 844 F.2d at 674.

[5] The court expresses no opinion regarding the other elements that apply to Plaintiffs' request for preliminary injunctive relief.  *See Winter*, 555 U.S. at 20; *Cottrell*, 632 F.3d at 1134-35.

Accordingly, the court has considered Putative Intervenors' joint response herein. (*See* Put. Intervenors Resp.)

However, the court has not ruled on Putative Intervenors' motions to intervene, which are not fully briefed, or on the merits of Plaintiffs' constitutional challenge. The court RENOTES the motions to intervene for January 6, 2017. Any responses are due on January 2, 2017, and Putative Intervenors' reply briefs, if any, are due on January 6, 2017.

## IV.   CONCLUSION

Based on the foregoing analysis, the court DENIES Plaintiffs' motion for a TRO and preliminary injunction (Dkt. # 2) and RENOTES Putative Intervenors' motions to intervene (Dkt. ## 9, 13) for January 6, 2017.

Dated this 15th day of December, 2016.

JAMES L. ROBART
United States District Judge